CHAISSON, J.
Terre G. Matranga, John P. Greathouse, Jr., Gina F. Greathouse, and James E. Greathouse ("the Greathouses") appeal a judgment of the trial court sustaining an exception of prescription in favor of Jefferson Parish Hospital Service District # 2, Parish of Jefferson, State of Louisiana, d/b/a East Jefferson General Hospital ("EJGH") and dismissing their negligent credentialing and privileging claims against EJGH. For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY[1]
The Greathouses' mother, Doris Greathouse, died on June 9, 2008, six days after experiencing complications during her intubation for general anesthesia in preparation for elective heart surgery at EJGH. On June 2, 2009, pursuant to the provisions of the Louisiana Medical Malpractice Act ("LMMA"),[2] the Greathouses timely requested the formation of a medical review panel to consider their medical malpractice claims against the anesthesiologist, Dr. Christopher Cougle, and the certified registered nurse anesthetist, Monica Wilkinson. On September 14, 2010, after receipt of an adverse opinion from the medical review panel, the Greathouses timely filed suit against Dr. Cougle, Ms. Wilkinson, their employer, Parish Anesthesia of Jefferson, LLC, and their insurer, Louisiana Medical Mutual Insurance Company (collectively, "the original defendants").[3]
After a trial of the matter as to the claims against the original defendants, the *1241 jury returned a verdict in favor of defendants which the trial court adopted as the judgment of the court. Upon appeal by the Greathouses, this Court reversed the judgment and remanded the matter for a new trial. Matranga , 170 So.3d at 1099.
On March 8, 2016, the Greathouses filed a supplemental and amending petition in which they added EJGH as a defendant, alleging that it was negligent in its credentialing and privileging of Dr. Cougle to practice anesthesiology in its hospital. In response, EJGH filed an exception of prescription which was sustained by the trial court.[4] It is from this judgment that the Greathouses now appeal.
On appeal, the Greathouses argue that the trial court erred in sustaining EJGH's exception of prescription because they alleged facts in their petition asserting that EJGH was a joint tortfeasor with the remaining, timely sued original defendants. The Greathouses further argue that their claim against EJGH has not prescribed because their petition against EJGH relates back to the filing of their petition against the original defendants.
DISCUSSION
Joint Tortfeasors
Prescription is interrupted by the commencement of suit against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462 ; Monson v. Travelers Prop. & Cas. Ins. Co. , 09-267 (La. App. 5 Cir. 12/8/09), 30 So.3d 66, 69. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. La. C.C. art. 2324(C) ; Monson , 30 So.3d at 69.
There is no dispute that the Greathouses timely brought suit against the original defendants in a court of competent jurisdiction and venue and the suit was pending at the time they amended their petition to name EJGH as an additional defendant.[5] Because the Greathouses have made sufficient allegations that EJGH is a joint tortfeasor with the original defendants, they argue that they are entitled to the benefit of the general rule regarding interruption of prescription as to joint tortfeasors such that prescription on their claim against EJGH was interrupted by the filing of the original suit, and that their claim against EJGH is not prescribed.
However, the LMMA provides a specific rule regarding the effect that the filing of a request for review of a medical malpractice claim against a health care provider has on the running of prescription as to joint tortfeasors. Specifically, La. R.S. 40:1231.8(A)(2)(a)[6] provides, in pertinent part:
... The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review... (emphasis added)
The Greathouses argue that because their claim against EJGH is solely *1242 for negligent credentialing and privileging of Dr. Cougle, which is a claim sounding in general negligence as opposed to one sounding in medical malpractice, the provisions of the LMMA, including La. R.S. 40:1231.8(A)(2)(a), are not applicable to their claim against EJGH, regardless of the fact that EJGH is a qualified health care provider under the LMMA.[7] They further argue, that because they are not subject to the provisions of the LMMA, they are entitled to rely upon the general rule regarding interruption of prescription as to joint tortfeasors found in La. C.C. art. 2324(C).
Therefore, the issue before this Court is whether the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a) are applicable to the Greathouses' negligent credentialing and privileging claim against EJGH, and further, if they are, whether they supersede the general rule regarding interruption of prescription as to joint tortfeasors found in La. C.C. art. 2324(C). For the following reasons, we find that the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a) are applicable to the Greathouses' claim against EJGH and that they do supersede the general rule regarding interruption of prescription found in La. C.C. art. 2324(C).
We begin our analysis with the language of the statute itself, which provides that "... filing of a request for review of a claim shall suspend the running of prescription against ... all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, ..." (emphasis added). La. R.S. 40:1231.8(A)(2)(a). The plain language of the statute indicates that it applies to all joint tortfeasors, not a particular subset of joint tortfeasors, identified either by their status or by the classification of the claim brought against them. Additionally, the qualifying phrase "... including but not limited to health care providers, ..." indicates that "health care providers" is a smaller subset of a larger set of joint tortfeasors to which the provision applies, supporting our interpretation that the legislature intended an expansive reading of the term "all joint tortfeasors." Had the legislature meant for the provision to apply only to a certain subset of joint tortfeasors, it could have expressed its intent in the language of the statute itself by using qualifying phrases for the term "joint tortfeasors" such as "only qualified health care providers," or "only health care providers, both qualified and not qualified," or "only against whom a medical malpractice claim is brought," rather than the expansive, all-inclusive term "all joint tortfeasors."
We further note that the Louisiana Supreme Court, in addressing the issue of which joint tortfeasors are subject to the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a), has adopted a broad interpretation of the phrase "all joint tortfeasors, including but not limited to health care providers." Milbert v. Answering Bureau, Inc. , 2013-0022 (La. 6/28/13), 120 So.3d 678. In Milbert , the initial, timely claim for medical malpractice was commenced against physicians and a hospital, all of which were health care providers, pursuant to the LMMA. A later suit, alleged to be untimely, was filed against one of the physician's answering service, a non-health care provider. The Supreme Court held that "... a *1243 non-health care provider may be a joint tortfeasor with a health care provider against whom a medical malpractice complaint has been filed, such that the suspension of the time limitations for filing suit under [ La. R.S. 40:1231.8(A)(2)(a) ] may apply to the filing of suit against the non-health care provider." Id. at 689.[8]
Similarly, our Court has adopted a broad interpretation of the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a). See Kampmann v. Mason , 08-508 (La. App. 5 Cir. 1/13/09), 7 So.3d 675, writ denied , 2009-0319 (La. 4/3/09), 6 So.3d 775. In Kampmann , the initial, timely claim for medical malpractice was commenced against a physician and a pharmacist, both health care providers, pursuant to the LMMA. The later suit, alleged to be untimely, was filed against a drug manufacturer, a non-health care provider. Our Court, in applying the suspensive provisions regarding prescription of the LMMA, found that the "... LMMA provides that the running of prescription is suspended during proceedings before a medical review panel, not only for qualified health care providers but also for any parties solidarily or jointly liable." Id. at 680.[9]
The Greathouses argue that their claim against EJGH is distinguishable because it is based in general negligence rather than in medical malpractice; however, we find no such distinction between this case and Milbert or Kampmann . Although those Courts did not expressly comment on the non-medical malpractice nature of the claims against the answering service ( Milbert ) or the drug manufacturer ( Kampmann ), it is clear that the claims against those entities were non-medical malpractice claims.[10] We find no rational basis to apply a different rule, as suggested by the Greathouses, to a claim against a joint tortfeasor that is non-medical malpractice in nature, from the rule that is applied to joint tortfeasors against whom a medical malpractice claim is made, especially in light of the fact that the Louisiana Supreme Court declined to do so in Milbert .
Our interpretation of the language of the statute itself, and our review of the jurisprudence interpreting it, leads us to *1244 conclude that it is not the status of the subsequently added defendant (i.e. , qualified health care provider, non-qualified health care provider, or non-health care provider), nor the nature of the claim brought against the subsequently added defendant (i.e. , medical malpractice claim or non-malpractice claim) that controls whether the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a) are applicable to the subsequently added claim. In our view, the controlling factor is that the alleged joint tortfeasor against whom the initial timely claim is brought is a health care provider, whether qualified or not, against whom the claim is initiated by the timely filing of a request for review pursuant to the LMMA. In that scenario, the effect that the filing of a timely request for review pursuant to the LMMA has on all joint tortfeasors is controlled by La. R.S. 40:1231.8(A)(2)(a).
Having found that the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a) are applicable to subsequently filed non-medical malpractice claims, we next address the issue of whether a plaintiff in such a scenario is precluded from also relying upon the general rule regarding interruption of prescription as to joint tortfeasors found in La. C.C. art. 2324(C).
In Borel v. Young , 07-0419 (La. 11/27/07), 989 So.2d 42, the Louisiana Supreme Court held that "... the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C)." Id. at 69. The Greathouses, recognizing that the subsequently added claim in Borel was a medical malpractice claim against qualified health care providers, invites this Court to draw a distinction between their non-medical malpractice claim against EJGH and the claims in Borel . Again, we find no rational basis upon which to draw such a distinction.
In Borel , the Supreme Court specifically stated that "... considering the doctrinal underpinnings for the existence of the rules of suspension [found in the LMMA], it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff." Id. at 67 (quoting LeBreton v. Rabito , 97-2221 (La. 7/8/1998), 714 So.2d 1226, 1231 ).
In Milbert , while the Supreme Court was not called upon to address this issue because the subsequently added claim against the answering service was filed within the suspended time limitations provided in La. R.S. 40:1231.8(A)(2)(a), the Court, in dicta , stated "[t]he Milberts do not seek the benefits of both the suspension of prescription provisions of the MMA and the interruption of prescription under the codal articles." Milbert , 120 So.3d at 685. In our view, this statement reveals a reservation on the part of the Supreme Court to allow a plaintiff to rely upon the benefits of suspension provided by La. R.S. 40:1231.8(A)(2)(a) and also rely upon the benefits of interruption provided by La. C.C. art. 2324(C), even where the subsequently added claim is not one of medical malpractice.[11]
*1245 In Kampmann , involving a subsequently added non-medical malpractice claim against a non-health care provider, our Court, quoting from Borel , stated "... the [more] specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C)." Kampmann , 7 So.3d at 681. While it is not entirely clear to us that the plaintiff in Kampmann argued for the benefit of interruption under La. C.C. art. 2324(C), it is clear that the Court found his subsequently added non-medical malpractice claim against the drug manufacturer was subject to the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a), and that he did not additionally receive the benefit of interruption of prescription under La. C.C. art. 2324(C), even though his timely filed initial claims against the alleged joint tortfeasors were still pending.
From our review of these cases, we conclude that the rule of Borel (that a plaintiff subsequently adding a claim of medical malpractice against a health care provider to a previously filed timely claim against a joint tortfeasor under the LMMA, may not rely upon the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a) and the general rule of interruption) is equally applicable to a plaintiff who subsequently adds a claim not based in medical malpractice. That plaintiff, whose subsequent claim against an alleged joint tortfeasor is subject to the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a), may not also rely upon the general rule of interruption provided by La. C.C. art. 2324(C).
Consequently, because the alleged joint tortfeasors, Dr. Cougle and Ms. Wilkinson, are health care providers against whom the initial claims were commenced by the filing of a request for review pursuant to the LMMA, the running of prescription as to claims against all other joint tortfeasors, including EJGH, is controlled by La. R.S. 40:1231.8(A)(2)(a). The filing of their request for review against Dr. Cougle and Ms. Wilkinson on June 2, 2009, suspended the running of prescription with one day remaining on the one-year liberative prescriptive period to bring their claim.[12] Prescription was suspended until October 17, 2010, which was ninety days after notification to the Greathouses, by certified mail, of the opinion of the medical review panel. The Greathouses therefore had until October 18, 2010, to file suit against not only Dr. Cougle and Ms. Wilkinson, but also against all alleged joint tortfeasors with whom they were potentially jointly liable, including EJGH.[13] Their suit against the original defendants filed on September 14, 2010, was therefore timely; however, their claim against EJGH, filed on March 8, 2016, was not timely.
Relation Back of Amended Petition
La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." The first criteria that must be met in determining whether Article 1153 allows an amendment to relate back to the date of filing of the original petition is "... the amended claim must arise out of the same transaction or occurrence set forth in the original pleading."
*1246 Bulliard v. City of St. Martinville , 14-140 (La. App. 3 Cir. 6/4/14), 139 So.3d 1269, 1273.
The alleged acts of medical malpractice set forth in the Greathouses' original complaint against Dr. Cougle and Ms. Wilkinson occurred on June 3, 2008, during preparation for Mrs. Greathouse's surgical procedure. According to their amended petition, the alleged acts of negligent credentialing and privileging by EJGH occurred "[b]eginning in 2007."
We recognize that the Louisiana Supreme Court, in Billeaudeau , distinguished between the "... 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein," which clearly falls under the definition of malpractice in the LMMA, and negligent credentialing and privileging that takes place in the hiring process when the physician first enters the hospital, which the Court found to be a claim in general negligence. Billeaudeau , 218 So.3d at 520-24. Consequently, although the phrase "beginning in 2007" is indeterminate, we find that, under the rational of Billeaudeau , the alleged negligent conduct of EJGH, in order to be characterized as negligent credentialing and privileging, is necessarily limited to the time period when Dr. Cougle was hired to begin practicing at EJGH. Any later alleged negligent conduct of EJGH, and certainly any alleged negligent conduct of EJGH that was occurring contemporaneously with Dr. Cougle's and Ms. Wilkinson's alleged medical malpractice in June 2008, would clearly be conduct within the ambit of "... training or supervision of health care providers ...," which falls squarely within the definition of medical malpractice. The Greathouses have emphasized that their claim against EJGH is solely for negligent credentialing and privileging, and therefore not medical malpractice, in order to support their argument that their claim against EJGH is excluded from the purview of the LMMA.
We find that the conduct alleged against EJGH, which occurred "beginning in 2007," does not arise out of the same alleged negligent conduct of Dr. Cougle and Ms. Wilkinson, which occurred on June 3, 2008. We conclude that the Greathouses' argument regarding relation back of their amended petition has no merit.
CONCLUSION
For the reasons stated, we find that the Greathouses' claim against EJGH for negligent credentialing and privileging is prescribed, and we therefore affirm the judgment of the trial court sustaining EJGH's exception of prescription and dismissing their lawsuit as to EJGH with prejudice.
AFFIRMED

This is the second time that this matter has come before this Court on appeal. A more detailed recitation of the underlying facts that gave rise to this litigation is contained in this Court's opinion in the first appeal, and will not be repeated here. See Matranga v. Parish Anesthesia of Jefferson, LLC , 14-448 (La. App. 5 Cir. 5/14/15), 170 So.3d 1077, writs denied , 2015-1143 and 2015-1168 (La. 9/18/15), 178 So.3d 148 and 178 So.3d 152.

Effective May 9, 2018, the LMMA, previously La. R.S. 40:1299.41 et seq. , was re-designated as La. R.S. 40:1231.1 et seq.

The suit was originally filed in Orleans Parish but was transferred to Jefferson Parish on June 28, 2011, after defendants' exceptions of insufficiency of service of process, lack of jurisdiction, and improper venue were sustained.

EJGH also filed exceptions of peremption, prematurity, vagueness, and non-conformity of the petition; however, the judgment as to those exceptions has not been appealed and therefore those exceptions are not discussed herein.

Because we hold that the Greathouses are not able to rely upon the general rule of interruption of prescription found in La. C.C. art. 2324(C), it is not necessary for us to address EJGH's arguments regarding whether the initial filing of suit in the wrong venue, Orleans Parish, served to interrupt prescription.

Previously La. R.S. 40:1299.47(A)(2)(a).

Seven months after the Greathouses amended their petition in this matter to add EJGH as a defendant, the Louisiana Supreme Court had occasion to resolve disagreement among our Courts regarding the nature of a negligent credentialing claim. The Court held that a negligent credentialing claim sounds in general negligence and therefore does not fall within the provisions of the LMMA. Billeaudeau v. Opelousas Gen. Hosp. Auth. , 2016-0846 (La. 10/19/16), 218 So.3d 513, 527.

We note that, although the Supreme Court focused on the status of the answering service as a non-health care provider, the answering service, in its attempt to avoid the application of the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a), argued, as do the Greathouses herein, that the later-filed claim was one based on general negligence, not medical malpractice, and therefore not subject to the provisions of the LMMA. Although presented with the opportunity to find the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a) inapplicable to the claim against the answering service on that basis, the Supreme Court, without expressly stating so, apparently rejected that argument and found the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a) applicable to that claim.

Like the Supreme Court in Milbert , our Court did not comment on the non-medical malpractice nature of the claim brought against the drug manufacturer, but rather focused upon the non-health care provider status of the drug manufacturer. Our Court found that the suspensive provisions regarding prescription found in La. R.S. 40:1231.8(A)(2)(a) were applicable to the claim against the drug manufacturer, but held that the plaintiff's claim against the drug manufacturer had nonetheless prescribed because it was filed outside of the suspensive time limitations provided in La. R.S. 40:1231.8(A)(2)(a) and that the plaintiff had not shown that he was entitled to rely upon the doctrine of contra non valentem .

The LMMA specifically defines medical malpractice as "... an unintentional tort or any breach of contract ...by a health care provider , ..." (emphasis added). La. R.S. 40:1231.1(A)(13). The LMMA's definition of "health care provider," which provides an exclusive list, does not include an answering service or drug manufacturer. La. R.S. 40:1231.1(A)(10).

The Greathouses argue that their claim against EJGH, based in general negligence, does not come within the purview of the LMMA and that they do not rely upon the suspensive provisions of the LMMA to defeat EJGH's exception of prescription. However, we note that without the benefit of the suspensive provisions of the LMMA, their lawsuit against Dr. Cougle and Ms. Wilkinson would not have been timely and could not serve to interrupt prescription as to their lawsuit against EJGH.

La. R.S. 9:5628 provides for a one-year liberative prescription for medical malpractice claims.

The prescriptive period for the non-medical malpractice claim against EJGH is also one year. La. C.C. art. 3492.