STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-215

MEGAN THOMAS, ET AL.

VERSUS

THE REGIONAL HEALTH SYSTEM
OF ACADIANA, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2016-2452-E
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of John D. Saunders, Shannon J. Gremillon, Phyllis M. Keaty, D. Kent Savoie, and Van H. Kyzar, Judges.

**REVERSED AND REMANDED.**

Keaty, J., dissents and assigns written reasons.
Gremillion, J., dissents for the reasosn assigned by Judge Keaty.

**David A. Hurlburt**
**M. Blake Monrose**
**George D. Ernest, III**
**Hurlburt, Monrose & Ernest**
**P.O. Drawer 4407**
**Lafayette, LA 70502**
**(337) 237-0261**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
   **Megan Thomas individually and as natural tutrix of her minor**
   **daughter, Mariah Charles**

**Aldric C. Poirier Jr.**
**Elizabeth S. Sconzert**
**Blue, Williams, L.L.P.**
**1060 West Causeway Approach**
**Mandeville, LA 70471-3046**
**(985) 626-0058**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **Regional Health System of Acadiana, LLC d/b/a Women's and**
   **Children's of Lafayette**
   **HCA Holdings, Inc.**
   **Health Care Indemnity, Inc.**

**Nicholas Gachassin, III**
**Julie Savoy**
**Gachassin Law Firm**
**P.O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Lafayette General Health Systems, Inc. d/b/a Lafayette General Medical**
   **Center**

**Carl E. Hellmers, III**
**Halley S. Carter**
**Frilot L.L.C.**
**3700 Energy Centre**
**1100 Poydras Street, Suite 3700**
**New Orleans, LA 70163-3700**
**(504) 599-8035**
**COUNSEL FOR AMICUS CURIAE:**
   **Ochsner Clinic Foundation**

**Chris J. LeBlanc**
**Watson, Blanche, Wilson & Posner**
**P.O. Box 2995**
**Baton Rouge, LA 70821-2995**
**(225) 387-5511**
**COUNSEL FOR AMICUS CURIAE:**
    **LAMMICO**
    **Louisiana Hospital Association**
    **Louisiana Hospital Association Medical Malpractice and General**
    **Liability Trust**
    **Willis-Knighton Health System**
    **Louisiana Ambulatory Surgery Center Association**

**KYZAR, Judge.**

The plaintiff, Meghan Thomas, individually and on behalf of her minor daughter, Mariah Charles, appeals from a trial court judgment granting exceptions of prematurity in favor of the defendant hospitals, dismissing Ms. Thomas' claims without prejudice. For the reasons set forth, we reverse the judgment of the trial court and remand the matter for further proceedings.

## DISCUSSION OF THE RECORD

On May 6, 2016, Ms. Thomas filed a negligence action against the following defendants: the Regional Health System of Acadiana, LLC d/b/a Women's and Children's Hospital; Women's and Children's of Lafayette;[1] Health Care Indemnity, Inc.; HCA Holdings, Inc. (all referred to collectively as Women's and Children's); and Lafayette General Health Systems, Inc. d/b/a Lafayette General Medical Center (referred to as LGMC).[2] The facts leading to this suit stem from the premature birth of Ms. Thomas' daughter, Mariah Charles, on October 8, 2014, at LGMC. Following her birth, Mariah remained hospitalized at LGMC through March 2, 2015, under the care of Dr. Geeta Dalal, a non-board certified pediatric cardiologist, who was credentialed at both LGMC and Women's and Children's.

Ms. Thomas alleged that during Mariah's hospitalization at LGMC, Dr. Dalal ordered and interpreted eight echocardiogram procedures, which revealed abnormal findings of a patent ductus arteriosus (PDA),[3] with a large left to right shunt, and an echogenicity, either a blood clot or an abnormal growth of tissue, on the atrial

---

[1] Ms. Thomas' petition named this defendant as "The Regional Health System of Acadiana, LLC, and Women's & Children's Hospital, Inc." with the defendant responding in its exception of prematurity with its correct legal name.

[2] Ms. Thomas' petition named this defendant as "Lafayette General Medical Center, Inc. and/or Lafayette General Health System, Inc., d/b/a Lafayette General Medical Center.

[3] Ms. Thomas described a PDA as "a hole between the pulmonary artery[,] which transports oxygen depleted blood to the lungs[,] and the aorta[,] which brings oxygen rich blood to the body."

septum. She asserted that a "PDA in a premature baby such as Mariah Charles can cause pulmonary artery hypertension, a serious and life threatening condition." Despite these findings, she claimed that Dr. Dalal took no further action. On March 2, 2015, Mariah was transferred to Women's and Children's, where she remained under the care of Dr. Dalal. Ms. Thomas asserted that while Mariah was hospitalized at Women's and Children's, Dr. Dalal interpreted at least three more echocardiograms, again noting a large PDA with a large left to right shunt. She claimed that despite this finding, Dr. Dalal did nothing to treat this life-threatening condition.

After Mariah's discharge from Women's and Children's on April 1, 2015, she remained under Dr. Dalal's care on an outpatient basis. On April 15, 2015, Dr. Dalal performed an echocardiogram and again noted a moderate PDA, with left to right shunt, and the echogenicity. She concluded that Mariah was hemodynamically stable and scheduled a one-month follow-up appointment.

Ms. Thomas alleged that Mariah was admitted to the pediatric intensive care unit at Women's and Children's on May 8, 2015, because of low oxygen saturation levels, despite being supplemented with oxygen. While there, she was examined by a board certified pediatric cardiologist, who immediately diagnosed pulmonary artery hypertension based on the results of an echocardiogram. Because she was experiencing a pulmonary hypertensive crisis, Mariah was transported via helicopter to the Children's Hospital of New Orleans, where the diagnosis of pulmonary artery hypertension was confirmed and a heart catheterization procedure was performed on May 13, 2015, to close the PDA.

On May 6, 2016, Ms. Thomas mailed a request to convene a Medical Review Panel, alleging medical malpractice against Dr. Dalal, Regional Health System of Acadiana, Women's and Children's, and LGMC, based on the above stated facts.

2

Her request was filed with the Louisiana Patient Compensation Fund on May 10, 2016. On May 6, 2016, Ms. Thomas also filed the instant suit against the defendant hospitals, LGMC and Women's and Children's, which repeated the medical facts alleged in her medical malpractice claim regarding Dr. Dalal's actions. However, the petition asserted that LGMC and Women's and Children's were liable under general tort law, rather than in medical malpractice, because they "negligently credentialed Dr. Dalal and negligently provided her with privileges to practice in [their] hospital[s]."

Ms. Thomas claimed that Mariah suffered damages as a result of the defendants' negligence in granting medical privileges to Dr. Dalal, including injuries and damage to her heart, circulatory system, and nervous system; developmental delays; damage to her respiratory system; loss of physical capacity; past and future pain and suffering; mental anguish; emotional distress; embarrassment and humiliation; loss of enjoyment of life, including the ability to live independently; past medical expenses; future medical expenses, including accommodations for her disabilities; custodial care expenses; loss of earning capacity; and loss of the chance of a better medical outcome, thereby, entitling her to recover general and special past, present, and future damages.

In response to the petition, both LGMC and Women's and Children's filed dilatory exceptions of prematurity, asserting that the negligent credentialing claims sounded in medical malpractice, which had not been submitted to a medical review panel, and were, thus, premature. As a result of the filing of the exceptions, the medical review panel proceeding was voluntarily stayed by agreement of all parties, pending a ruling from the trial court on the exceptions.

In its exception of prematurity, LGMC asserted that it was a qualified health care provider pursuant to the Louisiana Medical Malpractice Act (LMMA) and was

3

so qualified between October 2014 to May 2015, the date range of the incident that is the subject matter of Ms. Thomas' lawsuit. As a qualified health care provider, LGMC was entitled to have Ms. Thomas' claims presented first to a medical review panel in accordance with La.R.S. 40:1231.8, which provides, in part, that "[n]o action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel[.]" La.R.S. 40:1231.8(B)(1)(a)(i). Women's and Children's asserted essentially the same allegations in its exception of prematurity.

LGMC introduced the affidavit of Kathleen Degeyter, its System Director of Medical Staff Services, who stated that Dr. Dalal was initially credentialed, granted clinical privileges, and appointed to its medical staff in June 1987. She further stated that Dr. Dalal was re-credentialed every two years via its recredentialing process, which included peer review of her patient care, on an ongoing basis, through March 2011. Ms. Degeyter stated that once Dr. Dalal reached sixty-five years of age, she was subject to yearly recredentialing through the date of her retirement in June 2017.

At the conclusion of the hearing on November 9, 2017, the trial court granted the exceptions in favor of the hospitals. A formal judgment was rendered on December 18, 2017, and Ms. Thomas timely filed a petition for appeal on January 26, 2018. On appeal, Ms. Thomas argues that the trial court "erred as a matter of law in granting the exceptions of prematurity by apparently concluding that both credentialing and recredentialing of a physician falls under the Louisiana Medical Malpractice Act."

**OPINION**

The narrow question presented to this court is whether Ms. Thomas' claims for the alleged negligent recredentialing of Dr. Dalal against LGMC and Women's and Children's fall under the Louisiana Medical Malpractice Act (LMMA) or sound

4

in general negligence under the holding of *Billeaudeau v. Opelousas General Hospital Authority*, 16-846 (La. 10/19/16), 218 So.3d 513. If the claim is controlled by the LMMA, the trial court's grant of the exception of prematurity must be affirmed. If the claim is governed by general negligence law, the trial court's decision must be reversed.

At the outset, we note that the Louisiana Medical Malpractice Act (LMMA) "constitutes a special legislative provision in derogation of the general rights available to tort victims and, therefore, must be strictly construed." *Keating v. Van Deventer*, 14-157, p. 6 (La.App. 1 Cir. 9/19/14), 153 So.3d 1200, 1203, *writs denied*, 14-2147, 14-2181, 14-2188 (La. 1/9/15), 157 So.3d 598, 599, 1106.

The question of whether a claim sounds in medical malpractice is a question of law conducted under a *de novo* standard of review. *Matherne v. Jefferson Parish Hosp. Dist. No. 1*, 11-1147 (La.App. 5 Cir. 5/8/12), 90 So.3d 534, *writ denied*, 12-1545 (La. 10/12/12), 98 So.3d 873.

> The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination. *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 04-0451, p. 4 (La.12/1/04), 888 So.2d 782, 785. *See also* Frank L. Maraist, 1 La. Civ. Law Treatise, Civ. Proc. § 6:6 (2d ed.) (updated Nov. 2015). Under the MMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8. *See also Williamson*, 04-0451, p. 4, 888 So.2d at 785; *Spradlin v. Acadia-St. Landry Med. Found.*, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. In such situations, a defendant's exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action, but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id.* The burden of proving prematurity is on the moving party, in this case the Hospital, which must show that it is entitled to a medical review panel, because the allegations fall within the MMA. *Williamson*, 04-0451, p. 4, 888 So.2d at 785.

*Dupuy v. NMC Operating Co., L.L.C.*, 15-1754, pp. 3-4 (La. 3/15/16), 187 So.3d 436, 438-39.

5

The LMMA defines "malpractice" as

> [A]ny unintentional tort or any breach of contract based on health care
> or professional services rendered, or which should have been rendered,
> by a health care provider, to a patient, including failure to render
> services timely and the handling of a patient, including loading and
> unloading of a patient, and also includes all legal responsibility of a
> health care provider arising from acts or omissions during the
> procurement of blood or blood components, in the training or
> supervision of health care providers, or from defects in blood, tissue,
> transplants, drugs, and medicines, or from defects in or failures of
> prosthetic devices implanted in or used on or in the person of a patient.

La.R.S. 40:1231.1(A)(13).

In *Billeaudeau*, the supreme court, after applying the *Coleman* test[4] and analyzing the issue based on principles of statutory construction, held that a plaintiff's claim against a hospital for the negligent credentialing of a physician was weighted in favor of a finding that the claim sounded in general negligence and outside the purview of the LMMA and its limitations on liability.

LGMC and Women's and Children's urge that *Billeaudeau* only applies to claims involving the "initial credentialing" of a physician by a hospital and not to the recredentialing of a physician for the same privileges. They further urge that a

---

[4] In *Coleman v. Deno*, 01-1517, 01-1519, 01-1521, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16, the supreme court set out six factors for determining whether conduct by a health care provider constituted malpractice under the LMMA:

1. whether the particular wrong is "treatment related" or caused by a dereliction of professional skill.

2. whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.

3. whether the pertinent act or omission involved assessment of the patient's condition.

4. whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

5. whether the injury would have occurred if the patient had not sought treatment, and

6. whether the tort alleged was intentional.

6

recredentialing decision implicates a peer review and supervision component such as to fall within the gambit of medical malpractice. However, we find nothing within *Billeaudeau* to support such a limitation. To interpret the holding of the supreme court to such a narrow reading would lead to absurd results. In any case where a physician passed the initial credentialing process and had been recredentialed even once for privileges at a hospital, the hospital would then be able to assert that the claim was a malpractice claim as it involved supervision and oversight. We do not and cannot place such a limitation on the holding in *Billeaudeau*.

Just as the supreme court recognized in *Billeaudeau*, the exceptions of prematurity in this case, like the motion for summary judgment therein, do not seek dismissal of Ms. Thomas' claims on the merits, but simply a determination of whether a claim for the negligent credentialing or recredentialing of a physician, as in this case, is governed by the LMMA.

We first look to statutory construction to determine whether the claim for negligent credentialing or recredentialing falls within the scope of the LMMA. In *Mayeux v. Charlet*, 16-1463, p. 8 (La. 10/28/16), 203 So.3d 1030, 1036, the supreme court set out the rules regarding statutory construction:

> The starting point in the interpretation of any statute is the language of the statute itself as what a legislature says in the text of a statute is considered the best evidence of its intent and will. *M.J. Farms [Ltd. v. Exxon Mobile Corp]*, 07-2371 at p. 13 [(La. 7/1/08)], 998 So.2d [16,] 27. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9; La. Rev. Stat. §§ 1:3 and 1:4. However, ⌐¬when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10; La. Rev. Stat. § 1:3. The legislative history of an act and contemporaneous circumstances are also helpful guides in ascertaining legislative intent. *Exxon Pipeline Co. v. Louisiana Public Service Com'n*, 98-1737, p. 9 (La. 3/2/99), 728 So.2d 855, 860.

Justice Weimer, in his concurring opinion in *Billeaudeau*, 218 So.3d at 529-30 (alteration in original) (footnote omitted), noted:

> "[J]urisprudence, even when it arises to the level of *jurisprudence constante*, is a secondary source of law." **Delta Chemical Corp. v. Lynch**, 07-0431, p. 13 (La.App. 4 Cir. 2/27/08), 979 So.2d 579, 588 (citing Alvin B. Rubin, *Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the Erie Railroad*, 48 La. L. Rev. 1369, 1372 (1988)).

> Here, the primary source of law which guides our decision is statutory. This case turns on whether the Louisiana Medical Malpractice Act (LMMA) addresses what has been described as "credentialing" of a physician to work in a hospital emergency room. More specifically, the focus is whether La. R.S. 40:1299.41(A)(8) includes credentialing or its equivalent within the LMMA's definition of malpractice.

> After observing that credentialing is not explicitly mentioned in La. R.S. 40:1299.41(A)(8), the majority proceeds directly to the six-factor test from **Coleman v. Deno**, 01-1517, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16. Those six factors may be used "to assist a court in determining whether certain conduct by a qualified health care provider constitutes 'malpractice' as defined under the [L]MMA." **Williamson v. Hospital Service Dist. No. 1 of Jefferson**, 04-0451, p. 6 (La. 12/1/04), 888 So.2d 782, 786. However, because of the primary role of statutory law, any applicable traditional methods of statutory interpretation should be exhausted before resorting to assistance from the jurisprudential test in **Coleman**.

> Here, I find the rule of statutory construction *expressio unius est exclusio alterius* applicable. The rule has been recognized as an "established legal maxim," and dictates "that when a law specifically enumerates certain items but omits other items, the omission is deemed intentional." **Anderson v. Ochsner Health System**, 13-2970, p. 6 (La. 7/1/14), 172 So.3d 579, 583.

Louisiana Revised Statutes 40:1231.1(A)(13), in defining malpractice, lists specifically enumerated health care activities, including "all legal responsibility of a health care provider arising from acts or omissions . . . in the training or supervision of health care providers." However, the terms "credentialing," "recredentialing," "hiring," "rehiring," and "retention" are not included within the legal responsibility of a health care provider under the definition of malpractice under the LMMA.

8

The legislative history of the LMMA further supports the conclusion that credentialing and/or recredentialing are not included in the definition of malpractice. As this court noted in *Billeaudeau v. Opelousas General Hospital Authority*, 15-1034, p. 8 (La.App. 3 Cir. 4/6/16), 189 So.3d 561, 566, *writ granted*, 16-846 (La. 6/28/16), 192 So.3d 781, *affirmed*, 16-846 (La. 10/19/16), 218 So.3d 513, in discussing the legislative history of the LMMA, "[t]he original bill introduced in the senate would have included 'acts or omissions in the hiring, training, supervision, or retention of caregivers'" and that "[o]n three other occasions, bills were introduced in the Louisiana legislature to include 'credentialing' in the definition of medical malpractice[,]" but all of these efforts failed. *See* 2005 House Bill No. 257; 2006 House Bill No. 260; and 2008 Senate Bill No. 509. (Emphasis added.)

Thus, it is clear from the language of the LMMA that decisions involving the hiring or retention of a physician are not included within the definition of malpractice, and thus, are excluded from the procedural framework of the LMMA. The term "credentialing" was specifically omitted from the LMMA's definition of malpractice. Decisions concerning the retention of physicians for privileges at a hospital were also excluded from the definition of malpractice. Hiring and credentialing are one and the same, as are retention or recredentialing. None of these actions are covered under the auspices of the LMMA; thus, applying the principles of statutory construction, Ms. Thomas was not required to submit this claim to the medical review panel as a prerequisite to filing suit against either LGMC or Women's and Children's solely for negligent credentialing or recredentialing of Dr. Dalal.

Applying the *Coleman* factors to this claim also weighs in favor of a conclusion that it is one of general negligence as opposed to medical malpractice. The inquiry in negligent credentialing and recredentialing claims is not necessarily

9

"treatment related" or related to a dereliction of professional skill of the physician; thus, the first *Coleman* factor weighs heavily in favor of finding that the claim lies in negligence, rather than in malpractice. While the credentialing decision may involve a review of the physician's treatment-related actions in prior instances, whether at this hospital or another, the particular actions of the physician leading to the lawsuit are not highly relevant to the question of negligent credentialing, as they post-date the credentialing decision by the hospital. The inquiry is whether the hospital, given the background, history, and qualifications of the physician, should have granted him or her privileges to work within the confines of that hospital at the time of the credentialing or recredentialing process. Thus, it does not necessarily involve the supervision or training of the physician by the hospital itself.

Next, while expert testimony may well be required, it is not for the purpose of determining the standard of care of the physician in a given medical situation, but whether the physician met the qualifications for credentialing at a given hospital to perform specific medical services. The administrative decision to credential and recredential Dr. Dalal did not involve the assessment of Mariah's condition, nor did it necessarily involve the actual medical assessment of any patient's condition. Consequently, this third factor likewise mitigates against finding coverage within the scope of a malpractice claim under the LMMA.

As to the fourth *Coleman* factor, we recognize that credentialing is within the scope of activities a hospital is licensed to perform, specifically under La.R.S. 40:2114(E), and thus, this factor weighs in favor of the claim being within the realm of a malpractice claim. However, applying the rational of the supreme court in *Billeaudeau*, we also conclude that the fifth *Coleman* factor does not weigh greatly in favor of finding the negligent-credentialing claim covered under the LMMA, as

10

the decision to hire or retain a physician is not specifically treatment related. Finally, Ms. Thomas' claim was not based on an intentional tort.

Credentialing is credentialing, whether it was done one time or thirty-five times, and it applies to both the initial credentialing process and the recredentialing process. Just as a physician's prior performance, including past claims for malpractice, are considered in the initial credentialing decision, they will also affect subsequent credentialing decisions. That does not equate the credentialing or recredentialing process to a supervisory function. It continues to encompass the evaluation of the physician's personal, educational, and skills background in determining whether a physician should be allowed to care for patients within the walls of that particular hospital.

Accordingly, we find that the trial court erred in granting the peremptory exception of prematurity in favor of LGMC and Women's and Children's.

## DISPOSITION

Based on the foregoing, the judgment of the trial court is reversed and the matter is remanded for further proceedings. The costs of this appeal are assessed fifty percent to Regional Health System of Acadiana, LLC d/b/a Women's and Children's Hospital; Women's and Children's of Lafayette; Health Care Indemnity, Inc.; and HCA Holdings, Inc. and fifty percent to Lafayette General Health Systems, Inc. d/b/a Lafayette General Medical Center.

**REVERSED AND REMANDED.**

11

MEGAN THOMAS, ET AL.

VERSUS

THE REGIONAL HEALTH SYSTEM
OF ACADIANA, LLC, ET AL.

**KEATY, Judge, dissenting.**

I respectfully dissent from the majority opinion, and I would affirm the appealed judgment.

In the petition, Ms. Thomas alleged that "Dr. Dalal had all of the tests and clinical findings available to her in order to timely diagnose and treat baby Mariah Charles. Her failure to do so was a deviation from the accepted standard of medical care for pediatric cardiologists." Ms. Thomas further alleged that both LGMC and Women's and Children's "negligently credentialed Dr. Dalal and negligently provided her with privileges to practice in [their] hospital[s]."

As correctly noted in the majority opinion, the LMMA defines "malpractice" as:

> [A]ny **unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient**, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, **in the training or supervision of health care providers**, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La.R.S. 40:1231.1(A)(13) (emphasis added).

The majority relies heavily on the supreme court's analysis and holding in *Billeaudeau v. Opelousas General Hospital Authority*, 16-846 (La. 10/19/16), 218 So.3d 513, to support its finding that Ms. Thomas' allegations against the hospital defendants in this matter sounded in negligence such that the trial court erred in granting the exception of prescription brought by LGMC and Women's and Children's. After stating that "the only issue presented to this Court is whether plaintiffs' credentialing claim sounds in medical malpractice or in general negligence," the *Billeaudeau* court noted in footnote 9 that:

> [T]he circuit cases to which [the defendant hospital] refers all involved mixed allegations of negligent credentialing and supervision or strictly negligent supervision claims and, thus, are clearly distinguishable from the present case, which currently proceeds in this Court strictly on negligent credentialing. *See Talbert v. Evans*, 11-1096 (La.App. 4 Cir. 3/7/12), 88 So.3d 673; *Plaisance v. Our Lady of Lourdes Regional Med. Ctr., Inc.*, 10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17; *Dinnat v. Texada*, 09-665 (La.App. 3 Cir. 10/6/10), 30 So.3d 1139; *Bickham v. Inphynet, Inc.*, 03-1897 (La. 8/24/04), 899 So.2d 15.

*Id.* at 519.

In my opinion, the allegations made by Ms. Thomas herein are similar to those made by the plaintiffs in *Plaisance*, 47 So.3d 17. After considering the allegations in the plaintiffs' petition in light of the six-factor test pronounced in *Coleman v. Deno*, 01-1517, 01-1519, 01-1521 (La. 1/25/02), 813 So.2d 303, this court determined that the trial court did not err in granting the hospital defendant's exception of prematurity because the plaintiffs' claims sounded in medical malpractice rather than in negligence. *Plaisance*, 47 So.3d 17.

As written, I find that the majority's discussion of the *Coleman* factors is somewhat brief and conclusory. I believe that application of the *Coleman* test to the facts alleged in Ms. Thomas' petition leads to the same result as that which we

2

reached in *Plaisance*.  My belief is bolstered by a recent opinion handed down by the fifth circuit court of appeal.

In *Matranga v. Parish Anesthesia of Jefferson, LLC*, 17-73, (La.App. 5 Cir. 8/29/18), 254 So.3d 1238, the appellate court was tasked with reviewing a judgment sustaining an exception of prescription in favor of a hospital that was added as a defendant in a medical malpractice case that had been remanded to the trial court for a new trial.  The plaintiffs in *Matranga* were the surviving children of a woman who died in June 2008, "six days after experiencing complications during her intubation for general anesthesia in preparation for elective heart surgery."  *Id.* at 1240.  The originally named defendants were the anesthesiologist and the certified registered nurse anesthetist who had attempted to intubate the decedent.

> After a trial of the matter as to the claims against the original defendants, the jury returned a verdict in favor of defendants which the trial court adopted as the judgment of the court.  Upon appeal by the [plaintiffs, the fifth circuit] reversed the judgment and remanded the matter for a new trial.  *Matranga*[ *v. Parish Anesthesia of Jefferson, LLC*, 14-448 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, *writs denied*, 15-1143,15-1168 (La. 9/18/15), 178 So.3d 148, 152.]

*Matranga*, 254 So.3d at 1240-41.  Thereafter, the plaintiffs:

> filed a supplemental and amending petition in which they added [East Jefferson General Hospital (EJGH)] as a defendant, alleging that it was negligent in its credentialing and privileging of [the defendant anesthesiologist] to practice anesthesiology in its hospital.  In response, EJGH filed an exception of prescription which was sustained by the trial court.

*Id.* at 1241.  On appeal of that judgment, the fifth circuit observed:

> We recognize that the Louisiana Supreme Court, in *Billeaudeau*, [218 So.3d 513,] distinguished between the ". . . 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein," which clearly falls under the definition of malpractice in the LMMA, and negligent credentialing and privileging that takes place in the hiring process when the physician first enters the hospital, which the Court found to be a claim in general negligence. *Billeaudeau*, 218 So.3d at 520-24. Consequently, . . . , we find that, under the rational of *Billeaudeau*, the alleged negligent conduct of EJGH, in order to be characterized as negligent credentialing

3

and privileging, is necessarily limited to the time period when [the defendant anesthesiologist] was hired to begin practicing at EJGH. Any later alleged negligent conduct of EJGH, and certainly any alleged negligent conduct of EJGH that was occurring contemporaneously with [the anesthesiologist's and the certified registered nurse anesthetist's] alleged medical malpractice in June 2008, would clearly be conduct within the ambit of ". . . training or supervision of health care providers . . . " which falls squarely within the definition of medical malpractice.

*Id.* at 1246.

Here, Dr. Dalal was credentialed by LGMC approximately twenty-seven years before the conduct at issue took place. Accordingly, I conclude that Ms. Thomas' allegations against the hospital defendants in this matter necessarily encompass the "the training or supervision" of Dr. Dalal regardless of Ms. Thomas' having labeled her claims as "negligent credentialing." Accordingly, I would affirm the trial court's grant of the exceptions of prematurity brought by LGMC and Women's and Children's.