KEATY, Judge, dissenting.
I respectfully dissent from the majority opinion, and I would affirm the appealed judgment.
In the petition, Ms. Thomas alleged that "Dr. Dalal had all of the tests and clinical findings available to her in order to timely diagnose and treat baby Mariah Charles. Her failure to do so was a deviation from the accepted standard of medical care for pediatric cardiologists." Ms. Thomas further alleged that both LGMC and Women's and Children's "negligently credentialed Dr. Dalal and negligently provided her with privileges to practice in [their] hospital[s]."
As correctly noted in the majority opinion, the LMMA defines "malpractice" as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient , including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and *363 also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers , or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.R.S. 40:1231.1(A)(13) (emphasis added).
The majority relies heavily on the supreme court's analysis and holding in Billeaudeau v. Opelousas General Hospital Authority , 16-846 (La. 10/19/16), 218 So.3d 513, to support its finding that Ms. Thomas' allegations against the hospital defendants in this matter sounded in negligence such that the trial court erred in granting the exception of prescription brought by LGMC and Women's and Children's. After stating that "the only issue presented to this Court is whether plaintiffs' credentialing claim sounds in medical malpractice or in general negligence," the Billeaudeau court noted in footnote 9 that:
[T]he circuit cases to which [the defendant hospital] refers all involved mixed allegations of negligent credentialing and supervision or strictly negligent supervision claims and, thus, are clearly distinguishable from the present case, which currently proceeds in this Court strictly on negligent credentialing. See Talbert v. Evans , 11-1096 (La.App. 4 Cir. 3/7/12), 88 So.3d 673 ; Plaisance v. Our Lady of Lourdes Regional Med. Ctr., Inc. , 10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17 ; Dinnat v. Texada , 09-665 (La.App. 3 Cir. 2/10/10), 30 So.3d 1139 ; Bickham v. Inphynet, Inc. , 03-1897 (La. 8/24/04), 899 So.2d 15.
Id. at 519.
In my opinion, the allegations made by Ms. Thomas herein are similar to those made by the plaintiffs in Plaisance , 47 So.3d 17. After considering the allegations in the plaintiffs' petition in light of the six-factor test pronounced in Coleman v. Deno , 01-1517, 01-1519, 01-1521 (La. 1/25/02), 813 So.2d 303, this court determined that the trial court did not err in granting the hospital defendant's exception of prematurity because the plaintiffs' claims sounded in medical malpractice rather than in negligence. Plaisance , 47 So.3d 17.
As written, I find that the majority's discussion of the Coleman factors is somewhat brief and conclusory. I believe that application of the Coleman test to the facts alleged in Ms. Thomas' petition leads to the same result as that which we reached in Plaisance . My belief is bolstered by a recent opinion handed down by the fifth circuit court of appeal.
In Matranga v. Parish Anesthesia of Jefferson, LLC , 17-73, (La.App. 5 Cir. 8/29/18), 254 So.3d 1238, the appellate court was tasked with reviewing a judgment sustaining an exception of prescription in favor of a hospital that was added as a defendant in a medical malpractice case that had been remanded to the trial court for a new trial. The plaintiffs in Matranga were the surviving children of a woman who died in June 2008, "six days after experiencing complications during her intubation for general anesthesia in preparation for elective heart surgery." Id. at 1240. The originally named defendants were the anesthesiologist and the certified registered nurse anesthetist who had attempted to intubate the decedent.
After a trial of the matter as to the claims against the original defendants, the jury returned a verdict in favor of defendants which the trial court adopted as the judgment of the court. Upon appeal by the [plaintiffs, the fifth circuit] reversed the judgment and remanded *364 the matter for a new trial. Matranga [ v. Parish Anesthesia of Jefferson, LLC , 14-448 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, writs denied , 15-1143, 15-1168 (La. 9/18/15), 178 So.3d 148, 178 So.3d 152.]
Matranga , 254 So.3d at 1240-41. Thereafter, the plaintiffs:
filed a supplemental and amending petition in which they added [East Jefferson General Hospital (EJGH) ] as a defendant, alleging that it was negligent in its credentialing and privileging of [the defendant anesthesiologist] to practice anesthesiology in its hospital. In response, EJGH filed an exception of prescription which was sustained by the trial court.
Id. at 1241. On appeal of that judgment, the fifth circuit observed:
We recognize that the Louisiana Supreme Court, in Billeaudeau , [218 So.3d 513] distinguished between the "... 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein," which clearly falls under the definition of malpractice in the LMMA, and negligent credentialing and privileging that takes place in the hiring process when the physician first enters the hospital, which the Court found to be a claim in general negligence. Billeaudeau , 218 So.3d at 520-24. Consequently, ..., we find that, under the rational of Billeaudeau , the alleged negligent conduct of EJGH, in order to be characterized as negligent credentialing and privileging, is necessarily limited to the time period when [the defendant anesthesiologist] was hired to begin practicing at EJGH. Any later alleged negligent conduct of EJGH, and certainly any alleged negligent conduct of EJGH that was occurring contemporaneously with [the anesthesiologist's and the certified registered nurse anesthetist's] alleged medical malpractice in June 2008, would clearly be conduct within the ambit of "... training or supervision of health care providers ..." which falls squarely within the definition of medical malpractice.
Id. at 1246.
Here, Dr. Dalal was credentialed by LGMC approximately twenty-seven years before the conduct at issue took place. Accordingly, I conclude that Ms. Thomas' allegations against the hospital defendants in this matter necessarily encompass the "the training or supervision" of Dr. Dalal regardless of Ms. Thomas' having labeled her claims as "negligent credentialing." Accordingly, I would affirm the trial court's grant of the exceptions of prematurity brought by LGMC and Women's and Children's.