STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0637

WILLIAM COOK AND RENEE SOILEAU

VERSUS

CARL SWAYZE RIGBY, M.D. AND LOUISIANA MEDICAL MUTUAL
INSURANCE COMPANY

JUDGMENT RENDERED: ___DEC 0 2 2020___

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C633382 • Section 23

The Honorable William Morvant, Judge Presiding

* * * * * * *

| | |
|---|---|
| Michael C. Palmintier<br>Jonathan E. Mitchell<br>Baton Rouge, Louisiana | ATTORNEY FOR APPELLANT<br>PLAINTIFF—William Cook and<br>Renee Soileau |
| Kim E. Moore<br>Kelly J. Rookard<br>Brian G. Reaney, II<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANTS— Kapp Surgical<br>Instrument, Inc. |
| Hebert J. Mang, Jr.<br>Tara S. Bourgeois<br>Carey M. Nichols<br>Nancy B. Roberts<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANTS— Carl Swayze Rigby,<br>M.D., and Louisiana Medical Mutual<br>Insurance Company |
| Vance A. Gibbs<br>Randal R. Cangelosi<br>Jason R. Cashio<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANT— David Walker, M.D.,<br>Matthew A. Stair, M.D., Michael L.<br>Bruce, M.D., Radiology Associates,<br>L.L.C., and Louisiana Medical<br>Mutual Insurance Company |
| Douglas K. Williams<br>Kelsey A. Clark<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANTS— Our Lady of the<br>Lake Regional Medical Center |

* * * * * * *

BEFORE: WHIPPLE, C.J., MCDONALD, MCCLENDON, WELCH,
AND HOLDRIDGE, JJ.

**WELCH, J.**

The plaintiffs, William Cook and Renee Soileau, appeal a trial court judgment in favor of the defendant, Kapp Surgical Instrument, Inc. ("Kapp"), sustaining its peremptory exception raising the objection of prescription and dismissing the plaintiffs' claims against it with prejudice. For reasons that follow, we reverse the judgment of the trial court.

## BACKGROUND

On September 9, 2014, the plaintiffs filed a petition for damages, naming as defendants Carl Swayze Rigby, M.D. ("Dr. Rigby") and Louisiana Medical Mutual Insurance Company ("LAMMICO"). According to the allegations of the petition, on July 20, 2012, Mr. Cook underwent a heart valve repair, which was performed by Dr. Rigby. During the procedure, a retractor bolt from one of the surgical instruments fell into Mr. Cook's pericardium.[1] Dr. Rigby failed to notice that the bolt had come off of the surgical instrument and completed the surgical procedure, leaving the retractor bolt floating freely around Mr. Cook's pericardium. The plaintiff never saw Dr. Rigby again. On January 29, 2013, Mr. Cook saw his cardiologist, Dr. Fontenot, who took X-rays and found the bolt on the X-rays. It was at this time that Mr. Cook was informed that a piece of surgical equipment had been left in his body during the July 20, 2012 surgical procedure. According to the petition, the bolt remains in Mr. Cook's body and was last seen resting on top of his heart.

In the petition, Mr. Cook further alleged that the cause of the incident and resulting injuries was the substandard care and conduct of Dr. Rigby and that due to this alleged substandard conduct and care, he lives with a retractor bolt inside of his body, which will require further surgical intervention to remove, causing him

---

[1] The pericardium is "the fibroserous sac that surrounds the heart and the roots of the great vessels, comprising an external layer of fibrous tissue … and an inner serous layer…." *Dorland's Illustrated Medical Dictionary* (25th Edition), 1161. "The base of the pericardium is attached to the central tendon of the diaphragm." *Id.*

2

undue pain, mental anguish, and distress. Mr. Cook alleged that at the time of the incident, there was a policy of professional liability insurance issued by LAMMICO to Dr. Rigby in full force and effect, which provided coverage for the incident sued upon. Accordingly, the plaintiffs sought to recover damages from Dr. Rigby and LAMMICO.[2] In addition, Mr. Cook's wife, Ms. Soileau, sought damages for loss of consortium, service, and society.

The plaintiffs further alleged that they had filed a petition to establish a medical review panel with the Commissioner of Administration and Patient's Compensation Fund ("PCF") on July 19, 2013; however, a medical review panel chairman was not appointed within the allotted one-year time period set forth in La. R.S. 40:1299.47 (currently La. R.S. 40:1231.8).[3] Therefore, the plaintiff asserted that, in accordance with that statute, the parties were deemed to have waived the use of the medical review panel, allowing them to pursue this action in district court. In response to the plaintiffs' petition, Dr. Rigby and LAMMICO filed an answer generally denying the allegations of liability. In addition, Dr. Rigby and LAMMICO specifically pled the "fault of third parties for whom they [were] not legally responsible in mitigation of bar of any recovery in these proceedings."

Thereafter, on July 13, 2018, the plaintiffs filed an amended and supplemental petition, adding a host of new defendants, including Kapp.[4] In the

---

[2] The plaintiffs also asserted that the provisions of the Louisiana Medical Malpractice Act, which at the time were set forth in La. R.S. 40:1299.41, *et seq.*, but are currently set forth in La. R.S. 40:1231.1, *et seq.* ("LMMA"), were unconstitutional and therefore, null and void. However, while reserving this contention, the plaintiffs sought to avail themselves of the provisions of the LMMA. The parties subsequently agreed to bifurcate the plaintiffs' claim that the LMMA was unconstitutional from the plaintiffs' claims of medical malpractice.

[3] Louisiana Revised Statutes 40:1299.47(C) was re-designated as La. R.S. 40:1231.8 by H.C.R. No. 84 of the 2015 Regular Session.

[4] More specifically, the plaintiffs also added as defendants Our Lady of the Lake Hospital, Inc.; Radiology Associates, LLC; Matthew Allen Stair, M.D.; Michael Lynn Bruce, M.D.; David Wyman Walker, M.D.; and ABC Insurance Company ("the additional health care provider

3

amended petition, the plaintiffs claimed that Mr. Cook's injuries were additionally or alternatively the result of the fault of Kapp, within the meaning of the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*

In response to the plaintiffs' amended and supplemental petition, Kapp filed a peremptory exception raising the objection of prescription, contending that the plaintiffs' claims against it were barred by the applicable one-year liberative prescription period, because more than one year had passed from the date the plaintiffs alleged that they discovered the retractor bolt fell into Mr. Cook's chest during his July 20, 2012 surgery. After a hearing on January 14, 2019, the trial court sustained the objection of prescription and dismissed the plaintiffs' claims against Kapp with prejudice. A judgment in accordance with the trial court's ruling was signed on January 29, 2019, and it is from this judgment that the plaintiffs have appealed.

## LAW AND DISCUSSION

"Liberative prescription is a mode of barring of actions as a result of inaction for a period of time." La. C.C. art. 3447. Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it. **Bailey v. Khoury**, 2004-0620 (La. 1/20/05), 891 So.2d 1268, 1275. In this case, the plaintiffs' claims against Kapp are delictual in nature, brought pursuant to the LPLA. Louisiana Civil Code article 3492 provides, in pertinent part, that "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day [the] injury or damage is sustained." La. C.C. art. 3492. The one-year prescriptive period set forth in La. C.C. art. 3492 applies to claims brought pursuant to the LPLA.[5] **Marable v.**

---

defendants"). (R58) There are no issues on appeal with regard to the additional health care provider defendants.

[5] We note that La. C.C. art. 3492 further provides that prescription "does not run against minors or interdicts in actions involving permanent disabilit[ies] and brought pursuant to the [LPLA] or

4

**Empire Truck Sales of Louisiana, LLC**, 2016-0876 (La. App. 4th Cir. 6/23/17), 221 So.3d 880, 889, writ denied, 2017-1469 (La. 11/13/17), 230 So.3d 210; **American Zurich Ins. Co. v. Caterpillar, Inc.**, 2012-270 (La. App. 3rd Cir. 10/3/12), 99 So.3d 739, 741.

As noted above, the plaintiffs' original petition for damages named Dr. Rigby, a physician, and his insurer, LAMMICO, as defendants and arose out of Dr. Rigby's care of Mr. Cook. Claims arising out of patient care against a physician are subject to the special prescriptive periods set forth in La. R.S. 9:5628(A), which provides, in pertinent part, that:

> No action for damages for injury ... against any physician, ... whether based upon tort, ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

In this case, according to the allegations of the plaintiffs' petitions (both the original and the amended and supplemental), on January 29, 2013, the plaintiffs discovered that the retractor bolt fell into Mr. Cook's chest during the July 20, 2012 surgery. The plaintiffs filed their initial suit against Dr. Rigby on September 9, 2014.[6] However, the plaintiffs did not amend their suit to include allegations against Kapp until July 13, 2018—four years after this litigation was instituted and five years after Mr. Cook allegedly became aware of the retractor bolt lodged in his

---

state law governing product liability actions in effect at the time of the injury[.]" Herein, the plaintiffs are neither minors nor interdicts, and as such, this provision is inapplicable.

[6] As discussed hereinafter, there is no dispute that the plaintiffs' original suit against Dr. Rigby was timely filed, as it was filed during the period of time that prescription was suspended.

chest.[7] Thus, the plaintiffs' amended and supplemental petition alleging claims against Kapp was prescribed on its face.

When a petition reveals on its face that prescription has run, the plaintiff bears the burden of establishing that the claim has not prescribed. **LeBreton v. Rabito**, 97-2221 (La. 7/8/98), 714 So.2d 1226, 1228. The three principles on which a plaintiff can rely to meet that burden are: suspension, interruption, and renunciation. **LeBreton**, 714 So.2d at 1229. A plaintiff may rely on both the principles of suspension and interruption of prescription to defeat an objection of prescription. See **Shannon v. Vannoy**, 2017-1722 (La. App. 1st Cir. 6/1/18), 251 So.3d 442, 450-451.

Herein, the plaintiffs rely on the principles of both suspension and interruption of prescription. The plaintiffs note that initially, prescription was suspended by law against all joint tortfeasors during the medical review panel process, and that they timely filed suit against Dr. Rigby during the period prescription was suspended. The plaintiffs then argue that its timely suit against Dr. Rigby interrupted prescription as to all joint tortfeasors, including Kapp.

Since prescription adversely affects creditors, prescription may be suspended in favor of creditors who cannot enforce their claims. **LeBreton**, 714 So.2d at 1229. Suspension of prescription constitutes a temporary halt to its running; it is best described as a period of time in which prescription slumbers. *Id.* Prescription is suspended for as long as the cause of suspension continues. *Id.* After the cause for the suspension ends, the prescriptive time begins running and the time which preceded the suspension is added to the time which follows it to compose the necessary period; only the period of the suspension is deducted. *Id.*; see also La.

---

[7] The plaintiffs alleged that they became aware of the alleged fault of third parties, *i.e.*, the fault of Kapp and the additional health care provider defendants, in September 2017, when the plaintiffs received supplemental discovery responses from Dr. Rigby.

C.C. art. 3472.[8] At the root of the principle of suspension is the recognition that a creditor should not lose his legal claim during a period when enforcement of the claim is prevented. **LeBreton**, 714 So.2d at 1229.

In 1975, the Louisiana legislature, in response to a perceived medical malpractice crisis, enacted the LMMA. **Spradlin v. Acadia-St. Landry Medical Foundation**, 98-1977 (La. 2/29/00), 758 So.2d 116, 120. Under the LMMA, a private health care provider, by taking certain steps, can be qualified for entitlement to certain limitations not available to other tort defendants. *Id.* The primary limitations available to a private qualified health care provider are the limitation on the amount of damages that may be recovered from the qualified health care provider and the mandatory pre-lawsuit review by a medical review panel. *Id.* In addition to these limiting provisions, health care providers are entitled to the benefit of the special prescriptive periods set forth in La. R.S. 9:5628. *Id.*

Since the limiting provisions applicable to qualified health care providers are "special legislation in derogation of the rights of tort victims," these provisions are all strictly construed. *Id.* Moreover, the special provisions of the LMMA apply only to "malpractice," which is defined in the LMMA as "any unintentional tort … based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient …." La. R.S. 40:1231.1(13). Any other liability of a health care provider is governed by general tort law. **Spradlin**, 758 So.2d at 120.

Pursuant to La. R.S. 40:1231.8(A)(2), prescription is suspended during the pendency of the medical review panel proceedings until ninety days following notification, by certified mail, to the claimant or his attorney of the issuance of the

---

[8] Louisiana Civil Code article 3472 provides that "[t]he period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension."

7

opinion by the medical review panel or until ninety days after the plaintiffs' claims are dismissed due to the failure of the parties to appoint an attorney chairperson to the medical review panel. This suspension of prescription is applicable to any solidary or joint tortfeasor, including health care providers (qualified or not) and non-health care providers. See La. R.S. 40:1231.8(A)(2)(a) and (c); **Milbert v. Answering Bureau, Inc.**, 2013-0022 (La. 6/28/13), 120 So.3d 678, 685-686. When the ninety-day period of suspension is completed, the plaintiff in a medical malpractice action is entitled to count the period of time under La. R.S. 9:5628 that remains unused at the time the request for a medical review panel is filed. **Guitreau v. Kucharchak**, 99-2570 (La. 5/16/00), 763 So.2d 575, 576 and 580. That is, when the ninety day period expires, the period of suspension terminates and prescription commences to run again. *Id.* Once prescription begins to run again, counting begins at the point at which the suspension period originally began. **Guitreau**, 763 So.2d at 579.

In contrast to suspension, interruption not only stops the running of prescription, it annuls the commenced prescription so that after the interruption ceases, a new prescription must commence. **LeBreton**, 714 So.2d at 1229; see also La. C.C. art. 3466.[9] Furthermore, unlike suspension which requires no act by the creditor, interruption results from an act by a creditor or a debtor's renunciation. **LeBreton**, 714 So.2d at 1229. "Prescription is interrupted ... when the obligee commences action against the obligor[] in a court of competent jurisdiction and venue." La. C.C. art. 3462. Furthermore, "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. C.C. art. 2324(C).[10]

---

[9] Louisiana Civil Code article 3466 provides that "[i]f prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption."

[10] Louisiana Civil Code article 2323(A), which instituted comparative fault, provides that "[i]n any action for damages where a person suffers injury, death, or loss," the fault of "all persons

8

Herein, the act that allegedly caused the plaintiffs' damages occurred on July 20, 2012, during the surgery performed by Dr. Rigby, and the plaintiffs first became aware of that act on January 29, 2013. Since Dr. Rigby was a qualified health care provider under the LMMA, the plaintiffs filed their request to have their claim against Dr. Rigby reviewed by medical review panel in accordance with La. R.S. 40:1231.8 (formerly La. R.S. 40:1299.47) on July 19, 2013, which was within the prescriptive period set forth in La. R.S. 9:5628(A). At that point, pursuant to La. R.S. 40:1231.8(A)(2), prescription was then *suspended* against Dr. Rigby during the pendency of the medical review panel proceedings until ninety days following notification, by certified mail, to Mr. Cook or his attorney of the issuance of the opinion by the medical review panel or until ninety days after the plaintiffs' claims were dismissed due to the failure of the parties to appoint an attorney chairperson to the medical review panel. Furthermore, this suspension of prescription also applied to any joint tortfeasor with Dr. Rigby—whether health care provider or not. See La. R.S. 40:1231.8(A)(2)(a) and (c); **Milbert**, 120 So.3d 678, 685-686.

The medical review panel was dissolved and the plaintiffs' claims dismissed due to the failure to appoint an attorney chairperson to the medical review panel by letter dated May 21, 2014.[11] Thus, the plaintiffs' suit against Dr. Rigby filed on September 9, 2014 was timely, because it was filed within the period that

---

causing or contributing to the injury, death, or loss shall be determined." In determining whether liability for damages is a solidary or a joint and divisible obligation, La. C.C. art. 2324(A) provides that "[h]e who conspires with another person to commit an intentional or willful act" is solidarily liable "with that person, for the damage caused by such act." If liability is not solidary, then "liability for damages caused by two or more persons shall be a joint and divisible obligation." La. C.C. art. 2324(B).

[11] The record before us does not contain the letter dismissing the plaintiffs' claims due to the failure to appoint an attorney chairperson to the medical review panel. However, there does not appear to be any dispute that May 21, 2014 was the date of such letter, as all of the parties reference this date throughout the record and in their appellate briefs. Furthermore, although the plaintiffs' request to have their claim reviewed by a medical review panel was filed on July 19, 2013, there is no explanation in the record as to why the May 21, 2014 letter dismissing the plaintiffs' claims due to the failure of the parties to appoint an attorney chairperson was issued less than a year from July 19, 2013. See La. R.S. 40:1231.8(A)(2)(c).

prescription was suspended against Dr. Rigby and all joint tortfeasors. Nonetheless, what is disputed and what is at issue in this appeal is whether the plaintiffs are also entitled to the benefit of the general rule regarding the interruption of prescription as to joint tortfeasors. The plaintiffs maintain, that based on the allegations of its original and amended and supplemental petition, that Kapp was a joint tortfeasor with Dr. Rigby and since prescription was interrupted under La. C.C. art. 3462 when suit was timely filed against Dr. Rigby, prescription was also interrupted as to Kapp, a joint tortfeasor, pursuant to La. C.C. art. 2324(C).

Kapp—relying on **LeBreton**, 714 So.2d at 1231, **Borel v. Young**, 2007-0419 (La. 11/27/07), 989 So.2d 42, 69 (on rehearing), the expansion of **Borel** by the Louisiana Fifth Circuit Court of Appeal in **Kampmann v. Mason**, 2008-508 (La. App. 5th Cir. 1/13/09), 7 So.3d 675, 680, writ denied, 2009-0319 (La. 4/3/09), 6 So.3d 775, and **Matranga v. Parish Anesthesia of Jefferson, LLC**, 2017-73 (La. App. 5th Cir. 8/29/18), 254 So.3d 1238, writ denied, 2018-1561 (La. 2/18/19), 265 So.3d 772—maintains that as to Kapp (a non-health care provider), the more specific provisions of the LMMA regarding the suspension of prescription against all joint tortfeasors, *i.e.*, La. R.S. 40:1231.8(A)(2)(a), applies to the exclusion of the general civil code articles on the interruption of prescription against joint tortfeasors, *i.e.*, La. C.C. arts. 2324(C) and 3462. Thus, Kapp claims that the plaintiffs' suit against it was filed well beyond the time period provided by La. R.S. 40:1231.8(A)(2) and the one-year liberative prescription period set forth in La. C.C. art. 3492. Since Kapp seeks to limit the rights of the plaintiffs by applying the limitations in the LMMA to a claim that does not involve malpractice and does not involve a health care provider, we examine each of these cases in turn to see if they provide any support for Kapp's contention.

**LeBreton**, 714 So.2d at 1229-1231, concerned the effect of filing a medical malpractice lawsuit in district court before submitting the claim to a medical review panel. Prior to **LeBreton**, litigants who failed to first submit their medical malpractice claims to a panel were using the suspension of prescription provisions of the LMMA in conjunction with the Civil Code articles on interruption of prescription to extend the time in which a claimant could file a medical malpractice lawsuit. See **LeBreton**, 714 So.2d at 1230. In other words, a medical malpractice plaintiff could interrupt prescription by filing suit in district court against a health care provider within one year of the malpractice. The defendant would typically respond by filing an exception of prematurity seeking the dismissal of the lawsuit due to the plaintiff's failure to first file a request for a medical review panel. The plaintiff would then file a complaint with the PCF. Following the rendition of the panel decision, prescription would commence to run anew, thereby allowing a plaintiff as much as an additional year within which to file suit in district court. See **Borel**, 989 So.2d at 66.

Therefore, in **LeBreton**, 714 So.2d at 1231, the supreme court specifically addressed and sought to rectify the "anachronistic benefit" afforded to those litigants who, in failing to follow the proper procedural sequence in medical malpractice litigation, were able to simultaneously utilize the civil code articles on interruption of prescription with the specific provisions regarding the suspension of prescription in the LMMA to prolong their claim. The supreme court then recognized that the legislature equitably provided for the suspension of prescription during the pendency of the medical panel review process because the legislature *required* a litigant to submit a medical malpractice complaint to the panel review process before suit was filed. Thus, the supreme court held that *medical malpractice claims* were governed by the specific provisions of the LMMA regarding the suspension of prescription, and not the general code articles

11

on the interruption of prescription. *Id.* Furthermore, the supreme court noted that "*[a]s regards the non-qualified health care provider and cases not involving medical malpractice, [La. C.C.] art. 3462, the general provision, provides for interruption of prescription.*" (Emphasis added). **LeBreton**, 714 So.2d at 1231 n.7

In **Borel**, 989 So.2d at 69, the supreme court extended the holding of **LeBreton** to a qualified health care provider joint tortfeasor that the plaintiffs sought to include in the lawsuit more than three years after the alleged malpractice. Therein, on August 14, 2000, the Borels filed a request for review of claim of medical malpractice against an internist, obstetrician/gynecologist ("OB/GYN"), and a hospital arising out of the treatment of Ms. Borel, which commenced on August 18, 1999 and eventually resulted in her death on May 23, 2000. The medical review panel rendered an opinion finding no breach in the standard of care by either physician or the hospital, which was received by the plaintiffs on January 22, 2002. On March 28, 2002, the plaintiffs filed suit in district court against the hospital; neither the internist nor the OB/GYN were named as a defendant in the lawsuit. In February 2005, during the deposition of the hospital's expert, the plaintiffs discovered that the expert intended to testify that the internist's and OB/GYN's treatment of Ms. Borel fell below the applicable standard of care. The plaintiffs unsuccessfully attempted to amend their original petition to include the internist and OB/GYN. Therefore, they subsequently filed a separate suit on March 15, 2005 for malpractice against the internist, OB/GYN, and their insurers, alleging joint, several, and in solido liability with the hospital. The second suit was subsequently consolidated with the original lawsuit against the hospital. The internist and his insurer filed a peremptory exception raising the objection of prescription, which was sustained on the basis that the second suit filed on March

15, 2005—more than three years from the date of the alleged malpractice—was barred by peremption under La. R.S. 9:5628. The plaintiffs subsequently appealed.

The Louisiana Supreme Court, on rehearing, first answered the question whether the three year period set forth in La. R.S. 9:5628 was prescriptive or preemptive. **Borel**, 989 So.2d at 65-69. In reaffirming **Hebert v. Doctors Memorial Hospital**, 486 So.2d 717 (La. 1986), the supreme court held "that both the one-year and three-year periods set forth in [La.] R.S. 9:5628 [were] prescriptive, with the qualification that the *contra non valentem* type exception to prescription embodied in the discovery rule [was] expressly made inapplicable after three years from the act, omission, or neglect." **Borel**, 989 So.2d at 69. The supreme court noted that the Borels sought to add the internist, an alleged joint tortfeasor, to a pending medical malpractice action more than 90 days after the receipt of the medical review panel's decision finding that his conduct did not fall below the applicable standard of care *and* more than three years from the date of the alleged malpractice. **Borel**, 989 So.2d at 68. The supreme court then extended the rule of **LeBreton** to the facts of **Borel**, holding "the more specific provisions of the [LMMA] regarding suspension of prescription against joint tortfeasors appl[ied] to the exclusion of the general code article[] on interruption of prescription against joint tortfeasors, ... [La.] C.C. art. 2324(C)." **Borel**, 989 So.2d at 69. Thus, the supreme court concluded that the Borels' claims against the internist were properly dismissed on the basis of prescription. **Borel**, 989 So.2d at 69.

In **Kampmann**, Mr. Kampann filed a complaint requesting a medical review panel on March 30, 1999 to review his claims against a psychiatrist and a pharmacist in relation to treatment that he sought in the emergency room in September 1998 and the subsequent deleterious side effects that he suffered from a drug he was prescribed in conjunction with that treatment. **Kampmann**, 7 So.3d

13

at 676-677. In February 2003, the medical review panel rendered a decision in favor of both the psychiatrist and the pharmacist finding that the evidence did not support the conclusion that they failed to meet the applicable standard of care; however, the panel did find that there was a "material issue of fact, not requiring expert opinion, bearing on liability for consideration by the [c]ourt, as to whether Mr. Kampmann was informed of the risk of [the side effect from the medication he was prescribed] by [the psychiatrist]. **Kampmann**, 7 So.3d at 677.

On March 18, 2003, Mr. Kampann filed suit against the psychiatrist and the pharmacist; he subsequently filed a supplemental and amending petition on August 4, 2003 adding as a defendant Sidmak Laboratories, Inc. ("Sidmak"), the alleged manufacturer of the drug, alleging that the drug was unreasonably dangerous and that Sidmak was a joint tortfeasor with the psychiatrist and pharmacist. *Id.* In May 2007, when Mr. Kampmann produced the pills, it was discovered that Sidmak did not manufacture the drug taken by Mr. Kampmann, but rather, it had been manufactured by United Research Laboratories a/k/a Mutual Pharmaceutical Company ("Mutual"). **Kampmann**, 7 So.3d at 678. Thereafter, on June 29, 2007, the plaintiff filed another amended and supplemental petition, requesting Mutual be substituted in place of Sidmak as a defendant and alleging that Mutual was a joint tortfeasor. *Id.* Mutual responded by filing an objection of prescription on the basis that any of Mr. Kampmann's claims against it had prescribed because he had one year from the date of injury, or alternatively, ninety days from the date the medical review panel issued its opinion in which to file suit against Mutual, and since it failed to do so, his claims against it were prescribed. *Id.*

The district court sustained the objection of prescription, concluding that although Mutual was not a health care provider subject to the LMMA, pursuant to La. R.S. 40: 1299.47(A)(2)(a) (now La. R.S. 40:1231.8(A)(2)(a)), prescription was suspended against Mutual only for ninety days following notification to Mr.

14

Kampmann of the medical review panel's decision, and thus he had until October 2003 to file suit against *any* joint tortfeasor. **Kampmann**, 7 So.3d at 678. Since Mr. Kampmann did not amend his suit to name Mutual as a defendant until June 29, 2007, Mr. Kampmann's claims against Mutual were prescribed. **Kampmann**, 7 So.3d at 678.

On appeal, the fifth circuit found that Mr. Kampmann's subsequently added non-medical malpractice claim against the drug manufacturer was subject to the suspensive provisions of La. R.S. 40: 1299.47(A)(2)(a) (now La. R.S. 40:1231.8(A)(2)(a)), and that Mr. Kampmann did not additionally receive the benefit of interruption of prescription, even though Mr. Kampmann's timely filed initial claims against the psychiatrist and pharmacist—alleged joint tortfeasors with Mutual—was still pending. The court, citing La. C.C. arts. 2324(C), 3462, and 3463, also noted that in an ordinary tort suit not subject to the LMMA, the filing of suit against one joint tortfeasor would interrupt prescription as to other joint tortfeasors and would serve as a continuing interruption during the pendency of the suit. **Kampmann**, 7 So.3d at 681. However, citing **Borel**, the court held that the specific provisions of the LMMA regarding the suspension of prescription against joint tortfeasors applied to the exclusion of the general code articles on interruption of prescription against joint tortfeasors. *Id.* Thus, in **Kampmann**, the fifth circuit extended the holding of **Borel** and applied the LMMA to a situation involving a subsequently added non-medical malpractice claim against a non-health care provider.

In **Matranga**, 254 So.3d at 1245, the fifth circuit noted its prior holding in **Kampmann** and maintained that holding by concluding "that the rule of **Borel** (that a plaintiff subsequently adding a claim of medical malpractice against a health care provider to a previously filed timely claim against a joint tortfeasor under the LMMA, may not rely upon the suspensive provisions of La. R.S.

15

40:1231.8(A)(2)(a) and the general rule of interruption) is equally applicable to a plaintiff who subsequently adds a claim not based in medical malpractice." "That plaintiff, whose subsequent claim against an alleged joint tortfeasor is subject to the suspensive provisions of La. R.S. 40:1231.8(A)(2)(a), may not also rely upon the general rule of interruption provided by La. C.C. art. 2324(C)." **Matranga**, 254 So.3d at 1245.

In **Matranga**, 254 So.3d at 1240, Doris Greathouse died after experiencing complications during her intubation for general anesthesia in preparation for elective surgery at a hospital. On June 2, 2009, her children ("the Greathouses") timely requested the formation of a medical review panel to consider their claims of medical malpractice against the anesthesiologist and the nurse anesthetist. *Id.* On September 14, 2010, after the receipt of an adverse opinion from the medical review panel, the Greathouses timely sued the anesthesiologist, the nurse anesthetist, their employer and their insurer. *Id.* After trial, the jury returned a verdict in the favor of the defendants; however, on original appeal, the fifth circuit reversed and remanded for a new trial. **Matranga**, 254 So.3d at 1240-1241. Thereafter, on March 8, 2016, the Greathouses filed a supplemental and amending petition, adding the hospital as a defendant and alleging that the hospital was negligent in its credentialing and privileging of the anesthesiologist in its hospital. **Matranga**, 254 So.3d at 1241. The hospital responded by filing an objection of prescription, which the district court sustained. On appeal, the Greathouses argued that the hospital was a joint tortfeasor with the timely sued original defendants and that they were entitled to the benefit of the general rule regarding the interruption of prescription as to joint tortfeasors such that prescription on their claim against the hospital was interrupted by the filing of the original suit and that their claim against the hospital was not prescribed. **Matranga**, 254 So.3d at 1241. The Greathouses also argued that that the claim against the hospital related back to the

16

filing of the petition against the original defendants. **Matranga**, 254 So.3d at 1245.

The fifth circuit determined that because the alleged joint tortfeasors—the the anesthesiologist and the nurse anesthetist—were health care providers against whom the initial claims were commenced by the filing of a request for review pursuant to the LMMA, the running of prescription as to claims against all other joint tortfeasors, including the hospital, was controlled by La. R.S. 40:1231.8(A)(2)(a). The fifth circuit noted that prescription was suspended until ninety days after the notification to the Greathouses, by certified mail, of the opinion of the medical review panel not only for the medical providers but also against all joint tortfeasors with whom those health care providers were potentially jointly liable, including the hospital, and therefore, the Greathouses claim against the hospital was untimely. **Matranga**, 254 So.3d at 1245. In making this determination, the fifth circuit found "no rational basis to apply a different rule … to a claim against a joint tortfeasor that is non-medical in nature, from the rule that is applied to [a] joint tortfeasors against whom a medical malpractice claim is made[.]" **Matranga**, 254 So.3d at 1243. The fifth circuit believed that it was not the status of the subsequently added defendant nor the nature of the claim brought that controlled whether the suspensive provisions regarding prescription were applicable, but rather that the alleged joint tortfeasor against whom the initial timely claim is brought is a health care provider, whether qualified or not, against whom the claim is initiated by the timely filing of the request for review pursuant to the LMMA. **Matranga**, 254 So.2d at 1244.

Herein, at the January 14, 2019 hearing, the trial court, in its oral reasons for judgment, noted the holding of **Borel** that the provisions of the LMMA regarding the suspension of prescription against joint tortfeasors applied to the exclusion of

the civil code articles on the interruption of prescription.[12] The trial court then, relying on **Kampmann**, extended **Borel** to the facts of this case by finding that the holding of **Borel** was not just limited to health care providers, but applied to "anyone who is alleged to be a joint and solidary obligor."

Bearing in mind that the law favors the maintenance of an action in the face of prescription, we decline to interpret **Borel** as broadly as the trial court because we find such interpretation is contrary to the intent of the LMMA and La. R.S. 9:5628 and to the mandates of our supreme court that the LMMA is to be strictly construed and is only applicable to claims arising out of "malpractice." Furthermore, for these same reasons, while we respect the opinions of our brethren in the fifth circuit, we respectfully disagree with and decline to follow their holdings in **Kampmann** and **Matranga** extending **Borel** to non-malpractice claims or claims against non-health care providers.

Importantly, in **Borel**, the alleged joint tortfeasor that the Borels sought to add—the internist—was a qualified health care provider under the LMMA, the Borels' claims against that joint tortfeasor were based on allegations of malpractice, and that joint tortfeasor was named in the medical review panel proceedings. Thus, the supreme court found the holding of **LeBreton** "broad enough to extend" to **Borel**. **Borel**, 989 So.2d at 67.

---

[12] The trial court also cited **Warren v. Louisiana Medical Mut. Ins. Co.**, 2007-0492 (La. 12/2/08), 21 So.3d 186. Although **Warren** relied heavily on the legal precepts enunciated in **LeBreton** and **Borel** (as detailed hereinabove), **Warren** involved a timely petition against a qualified health care provider and whether the claims of a new plaintiff, who was not a party to the medical review panel process or the original petition, in an amended petition related back to the original petition, which is clearly not the issue before this Court. Rather, the issue herein is whether prescription was interrupted as to a non-health care provider (Kapp) by the timely filing of suit against a joint tortfeasor, Dr. Rigby, who is a qualified health care provider under the LMMA. Furthermore, because we find, for reasons detailed herein, that the original petition interrupted prescription against all joint tortfeasors, we need not address whether the amended and supplemental petition relates back to the original petition. See **McKenzie v. Imperial Fire and Casualty Insurance Company**, 2012-1648 (La. App. 1st Cir. 7/30/13), 122 So.3d 42, 53 n.13 (once a plaintiff establishes that a joint tortfeasor has been timely sued, consideration of the concept of the petition relating back to interrupt prescription is not necessary). As such, it is not necessary for us to address **Warren** herein.

18

Furthermore, both **LeBreton** and **Borel** involved claims that were governed by the prescriptive period set forth in La. R.S. 9:5628. It is evident, when reviewing the **Lebreton** and **Borel** decisions in their entirety, that the supreme court's holdings that the claims therein (*i.e.*, medical malpractice claims) should be governed by the specific provisions of the LMMA regarding the suspension of prescription to the exclusion of the general code articles on interruption of prescription were based largely on the overriding public policy concerns underlying the enactment of the LMMA and the special prescriptive periods set forth in La. R.S. 9:5628. That is, they were enacted in response to a "perceived medical malpractice crisis" and an increase in medical malpractice insurance rates. See **Spradlin**, 758 So.2d at 120; **Borel**, 989 So.2d at 62, citing **Hebert**, 486 So.2d at 722 n.9. At the time, it was believed that the lengthy periods of time allowed by law for filing medical malpractice lawsuits had contributed to the increasing number of malpractice claims and that if the number of suits were restricted, insurance risks would be reduced and rates would decline. See **Borel**, 989 So.2d at 62, citing **Hebert**, 486 So.2d at 722 n.9. Indeed, in **Borel**, the supreme court noted that a contrary holding applying La. C.C. art. 2324(C) "would potentially subject a health care provider to an indefinite period of prescription, even after the claim has been evaluated by a medical review panel, a result clearly at odds with the purpose of the [LMMA], which was to curtail lengthy periods for filing malpractice suits[.]" **Borel**, 989 So.2d at 68 n.12.

We find the holding of **Borel** (*i.e.*, that the more specific provisions of the LMMA regarding suspension of prescription against joint tortfeasors applies to the exclusion of the general code article on interruption of prescription against joint tortfeasors, La. C.C. art. 2324(C)) is limited to the addition of claims against joint tortfeasors that arise under the LMMA or are otherwise subject to the prescriptive periods set forth in La. R.S. 9:5628. It defies logic and common sense to apply

19

**Borel** to a situation involving a subsequently added non-medical malpractice claim against a non-health care provider who is subject to the liberative prescription period contained in La. C.C. 3492. Rather, in such cases, the general code articles on interruption of prescription should be applied. See **LeBreton**, 714 So.2d at 1231 and n.7.

Notably, our supreme court has *never* expanded the holdings of either **LeBreton** or **Borel**, *i.e.*, that the more specific provisions of the LMMA regarding the suspension of prescription against joint tortfeasors applied to the exclusion of the general code articles on interruption of prescription against joint tortfeasors, to non-health care provider defendants. In **Milbert**, 120 So.3d at 686, the supreme court held that the LMMA suspended prescription against all joint tortfeasors—whether they were a health care provider or not—once a request for a medical review panel had been filed. However, the supreme court did not address whether, as to a non-health care provider, this suspension applied to the exclusion of the civil code articles on the interruption of prescription because "the Milberts [were] not seek[ing] the benefits of both the suspensive provisions of the [L]MMA and the interruption of prescription under the cod[e] articles." **Milbert**, 120 So.3d at 685. Indeed, it was not necessary for the supreme court to even address the issue because the joint tortfeasor was sued when prescription was still suspended by the medical review panel proceedings. **Milbert**, 120 So.3d at 681.

In **Milbert**, Mr. Milbert was sent home from the hospital following surgery on his right ankle with instruction to call his doctor if needed. When Mr. Milbert's wife later attempted to call the doctor because of his pain and numbness, she was only able to reach an answering service, Dexcomm, and an on-call surgeon responded to the call. **Milbert**, 120 So.3d at 680. When Mr. Milbert's pain continued to worsen, Mrs. Milbert contacted the answering service, and after receiving no response, Mr. Milbert went to the emergency room. Ultimately, Mr.

20

Milbert had to undergo numerous debridement procedures due to extensive tissue damage, as well as numerous skin grafting procedures. *Id.* Mr. Milbert claimed that the alleged delay in his treatment, which he attributed to his doctors' failure to respond to the phone calls, caused him significant harm, so he filed a request for a medical review panel within one year of his hospitalization. *Id.*

Apparently, while Dexcomm informed the doctors of the initial phone calls, unbeknownst to the Milberts, Dexcomm failed to relay the subsequent phone calls, despite the doctors' instructions that he be contacted. However, it was only during discovery proceedings during the medical review panel process that the Milberts learned that the doctors had given specific instructions to Dexcomm that they should be contacted, that Dexcomm had failed to follow those instructions, and thus, that Dexcomm might be liable. **Milbert**, 120 So.3d at 681. Accordingly, the Milberts amended their request for a medical review panel to add Dexcomm before the panel expired; however, they were advised that Dexcomm was not a qualified health care provider. *Id.* Therefore, the Milberts filed suit against Dexcomm in district court. Dexcomm moved to dismiss the Milberts' claims on the basis of prescription, which the trial court granted and the court of appeal affirmed. **Milbert**, 120 So.3d at 682-683. The supreme court reversed, holding that "[i]f a non-health care provider is a joint tortfeasor with a health care provider, the rules which suspend the running of prescription against the health care provider, qualified or not qualified, will be applied to the non-health care provider." **Milbert**, 120 So.3d at 686. Thus, because the Milberts filed their suit against Dexcomm while the medical review panel proceedings were still pending, and thus, when prescription was suspended against the health care providers and all joint tortfeasors, the Milberts' suit against Dexcomm was not prescribed.

Furthermore, in **Milbert**, the supreme court recognized that its holding, under some circumstances, would allow a plaintiff to have a longer time to file suit

21

against a non-health care provider than might ordinarily occur and "[t]he fact that the time period for filing suit may be extended beyond the one year prescriptive period for negligence actions against a joint tortfeasor, or a joint or solidary obligor, is a direct result of the language and clear legislative intent" of the LMMA and "[a]s such, ... more appropriately addressed to the legislature." **Milbert**, 120 So.3d at 686.

Under **Milbert**, the filing of a timely request for a medical review panel has the effect of suspending prescription against not only the health care provider against whom a claim has been made, but any joint tortfeasor with whom that health care provider may be liable. Following this period of suspension, we see no reason why a plaintiff should not also be entitled to rely upon the general rules of interruption of prescription against a non-health care provider joint tortfeasor. See generally **Shannon**, 251 So.3d at 450-451 (a plaintiff may rely on both the principles of suspension and interruption of prescription to defeat an objection of prescription). In **Borel** and **LeBreton**, the supreme court determined that the suspensive provisions of the LMMA should be applied to the exclusion of the general code articles on interruption of prescription. However, the supreme court's decisions therein were based heavily on the public policy concerns underlying the enactment of the LMMA and the special prescriptive periods set forth in La. R.S. 9:5628, *i.e.* purported protection of health care providers from increasing malpractice insurance rates attributable to lengthy prescriptive periods for filing malpractice claims. The same public policy concerns do not exist in non-malpractice based claims against non-health care providers. The LMMA was never intended to protect non-health care providers, such as Kapp, was never intended to apply to any claims other than malpractice claims, and applying its provisions herein to the exclusion of the general code articles on the interruption of

22

prescription for joint tortfeasors does not serve to facilitate any purpose of the LMMA.

For these reasons, we find that the trial court erred in sustaining the objection of prescription and in expanding the holding of **Borel** to a non-health care provider joint tortfeasor because the plaintiffs' claims against Kapp are not medical malpractice claims, are not subject to the special prescriptive periods set forth in La. R.S. 9:5628, and are not otherwise governed by the LMMA. Under the general rules of interruption of prescription against a joint tortfeasor, the applicable one-year prescriptive period to their claims against Kapp was interrupted by their timely suit against Dr. Rigby. See La. C.C. arts. 2324(C) and 3462. Accordingly, we reverse the January 29, 2019 judgment of the trial court.

## CONCLUSION

For all of the above and foregoing reasons, the January 29, 2019 judgment of the trial court, which sustained the peremptory exception raising the objection of prescription filed by the defendant, Kapp Surgical Instrument, Inc., and dismissed the claims of the plaintiffs, William Cook and Renee Soileau, against Kapp Surgical Instrument, Inc. is reversed.

All costs of this appeal are assessed to the defendant/appellee, Kapp Surgical Instrument, Inc.

**REVERSED.**

23

WILLIAM COOK AND RENEE SOILEAU

VERSUS

CARL SWAYZE RIGBY, M.D. AND LOUISIANA MEDICAL MUTUAL INSURANCE
COMPANY

*PMC* *dygfaw*

***************************************************

**McClendon, J., dissenting.**

I must respectfully dissent from the majority's opinion reversing the judgment of

the trial court. Based on the language of LSA-R.S. 40:1231.8 (formerly LSA-R.S.

40:1299.47) of the Louisiana Medical Malpractice Act (LMMA) and the Louisiana

Supreme Court cases of **LeBreton v. Rabito**, 97-2221 (La. 7/8/98), 714 So.2d 1226,

**Borel v. Young**, 07-0419 (La. 11/27/07), 989 So.2d 42, 69 (on rehearing), and

**Milbert v. Answering Bureau, Inc.**, 13-0022 (La. 6/28/13), 120 So.3d 678, 685-86,

I believe that the trial court was correct in sustaining the exception of prescription filed

by the defendant, Kapp Surgical Instrument, Inc. (Kapp) and dismissing the claims of

the plaintiffs.

Louisiana Revised Statutes LSA-R.S. 40:1231.8 provides, in pertinent part:

> The filing of a request for review of a claim shall suspend the running of
> prescription against all joint and solidary obligors, and all joint tortfeasors,
> including but not limited to health care providers, both qualified and not
> qualified, to the same extent that prescription is suspended against the
> party or parties that are the subject of the request for review.

LSA-R.S. 40:1231.8A(2)(a).

In **LeBreton**, the supreme court interpreted this language and held that "the

filing of a medical malpractice claim with a medical review panel triggered the

suspension of prescription specially provided by the [LMMA], rather than the

interruption of the liberative prescriptive period generally provided in the Civil Code."

**LeBreton**, 714 So.2d at 1230. In reaching its decision, the supreme court, citing

Plainiol, recognized that the suspension of prescription "exists as an equalizer to

1

litigants who find themselves in those instances where interruption of prescription is not available." **LeBreton**, 714 So.2d at 1230. The supreme court stated:

> Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. [LSA-R.S. 40:1231.8A(2)(a)]. Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. **Id.** After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider. ... Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.

**LeBreton**, 714 So.2d at 1230.

Thereafter, in **Borel**, the supreme court confirmed that **LeBreton** "clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, to the exclusion of the general codal articles on interruption of prescription." **Borel**, 989 So.2d at 67. The supreme court in **Borel** then held that the rule of **LeBreton** extended to joint tortfeasors and that "the more specific provisions of the Medical Malpractice Act regarding the suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C)." **Borel**, 989 So.2d at 69.

Subsequently, the supreme court in **Milbert** determined that if a non-health care provider is a joint tortfeasor with a health care provider, the rules that suspend the running of prescription against the health care provider, qualified or not qualified, will be applied to the non-health care provider. **Milbert**, 120 So.3d at 686. The **Milbert** court stated:

> [T]he phrase "both qualified and not qualified" obviously modifies the term "health care providers" which immediately precedes it. Rather than using limiting language, the legislature used expansive language to provide that the joint and solidary obligors, and all joint tortfeasors, for

2

whom prescription is suspended **includes but is not limited to** these two types of health care providers, i.e. both health care providers who have qualified and who have not qualified under the MMA. By using this expansive language, the legislature clearly means the two types of health care providers are a part or subset of a larger set or group (in this case, the group consisting of obligors and tortfeasors), and that this larger group of obligors and tortfeasors may also include entities other than health care providers. There is no limitation or restriction in the legislation as to who may be a joint tortfeasor. We will not read into the statute a limitation which does not exist. Nothing in the language of the statute prohibits a non-health care provider from being a joint tortfeasor with a health care provider under an appropriate fact situation.

(Emphasis in original). **Milbert**, 120 So.3d at 685.[1] Finding the legislative intent to be clear, express, and unambiguous, the **Milbert** court determined that the statute should be applied as written and that the specific provisions of the LMMA with regard to the suspension of prescription were applied to a defendant who was alleged to be a joint tortfeasor with a health care provider made the subject of a medical malpractice complaint. **Milbert**, 120 So.3d at 687.

Subsequent to these supreme court decisions, the fifth circuit in **Matranga v. Parish Anesthesia of Jefferson, LLC**, 17-73 (La.App. 5 Cir. 8/29/18), 254 So.3d 1238, writ denied, 18-1561 (La. 2/18/19), 265 So.3d 772, was faced with the issues of whether the suspensive provisions regarding prescription found in LSA-R.S. 40:1231.8A(2)(a) were applicable to the plaintiffs' negligent credentialing and privileging claim against a hospital, as opposed to one sounding in medical malpractice, and, if they were, whether they superseded the general rule regarding interruption of

---

[1] The supreme court further found this interpretation to be correct considering the context in which the relied-upon language in the statute is found:

The second sentence of [LSA-R.S 40:1231.8A(2)(a)] gives guidance in the situation where there are claims against multiple tortfeasors, for which there may be different time limitations for filing suit. Where suit is filed against alleged joint and solidary obligors, or joint tortfeasors, the legislature indicates its preference in this second sentence for the same time limitation to be applied to all of the defendants. In that situation, the legislature provides that the filing of a request for review of a malpractice claim against the health care provider, qualified or not qualified, shall suspend the running of prescription for filing suit "to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." This legislation produces the imminently practical result that allegations of joint or concurrent negligence may be determined at the same time.

**Milbert**, 120 So.3d at 685-86.

prescription as to joint tortfeasors found in LSA-C.C. art. 2324C.[2] The fifth circuit

answered both questions in the affirmative. **Matranga**, 254 So.3d at 1242.

The fifth circuit found no rational basis to apply a different rule to a claim

against a joint tortfeasor that is non-medical malpractice in nature, from the rule that is

applied to joint tortfeasors against whom a medical malpractice claim is made,

especially in light of the fact that the Louisiana Supreme Court declined to do so in

**Milbert**. The court stated:

> Our interpretation of the language of the statute itself, and our
> review of the jurisprudence interpreting it, leads us to conclude that it is
> not the status of the subsequently added defendant (*i.e.*, qualified health
> care provider, non-qualified health care provider, or non-health care
> provider), nor the nature of the claim brought against the subsequently
> added defendant (*i.e.*, medical malpractice claim or non-malpractice
> claim) that controls whether the suspensive provisions regarding
> prescription found in [LSA-]R.S. 40:1231.8(A)(2)(a) are applicable to the
> subsequently added claim. In our view, the controlling factor is that the
> alleged joint tortfeasor against whom the initial timely claim is brought is
> a health care provider, whether qualified or not, against whom the claim
> is initiated by the timely filing of a request for review pursuant to the
> LMMA. In that scenario, the *effect* that the filing of a timely request for
> review pursuant to the LMMA has on *all* joint tortfeasors is controlled by
> [LSA-]R.S. 40:1231.8(A)(2)(a).

(Emphasis in original). **Matranga**, 254 So.3d at 1243-44.

Based on the plain language of LSA-R.S. 40:1231.8A(2)(a) and in light of the

decisions of the Louisiana Supreme Court discussed herein, it is clear that the

suspensive provisions found in LSA-R.S. 40:1231.8A(2)(a) are applicable to

subsequently filed claims against alleged joint tortfeasors in a medical malpractice

claim, to the exclusion of the general rule of interruption set forth in LSA-C.C. art.

2324C. To hold otherwise would grant greater rights to a plaintiff with regard to a later

added joint tortfeasor than those available with regard to the originally named health

care provider.

The plaintiffs alleged in their petition that on January 29, 2013, they were first

made aware and informed that a piece of surgical equipment was left in Mr. Cook's

body during the July 20, 2012 surgical procedure. The filing of the plaintiffs' request for

---

[2] Previously, in **Kampmann v. Mason**, 08-508 (La.App. 5 Cir. 1/13/09), 7 So.3d 675, <u>writ denied</u>, 09-0319 (La. 4/3/09), 6 So.3d 775, the fifth circuit applied the suspension of prescription to the exclusion of the Civil Code article providing for interruption of prescription among non-health care joint tortfeasors ("the suspension of prescription provided under the LMMA applies not only to health care providers, but also to any joint or solidary tortfeasors"), citing the language of LSA-40:1231.8.

4

review on July 19, 2013, 168 days later, suspended the running of prescription. However, the medical review panel was dissolved on May 21, 2014, for the failure to appoint an attorney chairperson, and prescription was suspended for another ninety days, or until August 19, 2014. Prescription then began to run again. On September 9, 2014, the plaintiff filed suit against Dr. Rigby and LAMMICO. The plaintiffs had 197 days to file suit against Kapp, or until March 4, 2015. However, the plaintiffs did not amend their petition to add Kapp until July 13, 2018. Therefore, I would find the plaintiffs' claim against Kapp is prescribed.

5